UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RAIZEL ARMANDO CALVETTE CHIRINOS**
**and IRIS VIVAS LAINES,**

    Plaintiffs,

    v.                                            Case No.  25-CV-1863

**KRISTI NOEM, Secretary, U.S. Department**
**of Homeland Security, et al.,**

    Defendants.

---

### DECISION AND ORDER ON PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

---

Raizel Calvette Chirinos, a Venezuelan national currently in the custody of the U.S. Immigrations and Customs Enforcement ("ICE"), seeks a temporary restraining order ("TRO") to prevent the Executive Office for Immigration Review ("EOIR") from issuing any decisions, including the entry of a removal order, pending resolution of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* claims raised in his complaint. (Docket # 13.) A removal hearing is currently scheduled for March 4, 2026. (Docket # 20.) For the reasons further explained below, Calvette Chirinos' motion for a TRO is granted.

### BACKGROUND

On October 6, 2025, Calvette Chirinos, through counsel, submitted to the United States Citizenship and Immigration Services ("USCIS") a request under FOIA for Calvette Chirinos' full "A-File." (Affidavit of Allison Mignon "Mignon Aff.") ¶ 2, Docket # 15.) Because of counsel's knowledge of Calvette Chirinos' case, she was aware that his A-File would include documentation of Calvette Chirinos' inspection appointment at the Nogales

Port of Entry, as well as documentation provided to USCIS in support of Calvette Chirinos' I-589 application. (*Id.* ¶ 2.) Calvette Chirinos asserts that he did not receive his complete A-File in response to his FOIA request and the absence of access to his entire file hinders his ability to prepare a defense in his removal proceedings. (*Id.* ¶ 4.)

Calvette Chirinos filed the present lawsuit on November 25, 2025, alleging Department of Homeland Security ("DHS") Secretary Kristi Noem, Acting Director of ICE Todd Lyons, Director of the Chicago ICE Field Office Sam Olson, and USCIS violated his rights under FOIA in various ways. (Docket # 1.) Subsequent to filing this federal FOIA lawsuit, Calvette Chirinos appeared before the EOIR for a hearing on December 1, 2025. (Mignon Aff. ¶ 5.) Calvette Chirinos' counsel asked the judge for a continuance based on his pending FOIA claims. (*Id.*) The judge granted a continuance to January 12, 2026, making clear that the continuance was only for the purpose of obtaining a copy of Calvette Chirinos' I-589 application. (*Id.*) The judge indicated that once the record was received, he intended to move forward with the removal proceedings. (*Id.*)

On December 2, 2025, Calvette Chirinos' counsel was alerted that the I-589 form was filed through the EOIR online filing system, allowing counsel to access the documents. (*Id.* ¶ 6.) Calvette Chirinos asserts that this filing did not satisfy his request for his full A-File. (*Id.*) On December 15, 2025, Defendants appeared in the present case and requested a 30-day extension in which to file an answer or other responsive pleading to Calvette Chirinos' complaint. (Docket # 9.) Calvette Chirinos opposed Defendants' request (Docket # 12) and on January 5, 2026, filed the instant motion for a TRO asking the Court to prevent EOIR from setting Calvette Chirinos' case for a merits hearing or issuing a removal order until the FOIA issues are resolved (Docket # 13). On January 6, 2026, I ordered

Defendants to file a response to the complaint and the TRO motion by January 23, 2026. Defendants subsequently filed a motion to dismiss Calvette Chirinos' complaint. (Docket # 17.) On February 13, 2026, Calvette Chirinos alerted the Court that EOIR set a removal hearing for March 4, 2026. (Docket # 20.)

## ANALYSIS

1. *Legal Standard*

Calvette Chirinos requests the Court enter a temporary restraining order in this case. A court may grant a TRO under Fed. R. Civ. P. 65(b) only in extremely limited circumstances, and the TRO may only last up to fourteen days, unless before that time expires, it is extended for another fourteen days for good cause or the adverse party consents to a longer extension. *Chen v. Noem*, No. 1:25-CV-00733-TWP-MG, 2025 WL 1163653, at *3 (S.D. Ind. Apr. 21, 2025); Fed. R. Civ. P. 65(b)(2). The "essence" of a TRO is "its brevity, its ex parte character, and . . . its informality." *Decker v. Lammer*, No. 21-1328, 2022 WL 135429, at *2 (7th Cir. Jan. 14, 2022) (internal quotation and citation omitted). The standard for assessing a TRO motion is the same as the standard applicable to a motion for a preliminary injunction, *Vela v. Schmidt*, No. 25-CV-2004, 2025 WL 3707039, at *1 (E.D. Wis. Dec. 22, 2025).

Thus, to warrant a TRO, a plaintiff must demonstrate that he: (1) has no adequate remedy at law and will suffer irreparable harm if the restraining order is denied and (2) has some likelihood of success on the merits of his claim. *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). If the plaintiff meets this threshold burden, then the court weighs the competing harms to the parties if a restraining order is granted or denied and also considers the public interest. *Id.* "This equitable balancing proceeds on a sliding-scale analysis; the

greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id.* The aim is to minimize the costs of making a wrong decision. *Id.*

    2.    *Whether this Court Lacks Jurisdiction to Bind EOIR*

Defendants argue that this Court lacks subject matter jurisdiction to enjoin EOIR from proceeding with Calvette Chirinos' removal proceedings. First, they argue that EOIR is not a party to this action and thus cannot be bound by a TRO under Fed. R. Civ. P. 65(d)(2). (Docket # 16 at 3–5.) Second, Defendants argue that 8 U.S.C. § 1252(a)(1) and (b)(9) precludes judicial review prior to the entry of a final order of removal over challenges to any part of the process by which one's removability will be determined. (*Id.* at 5–6.) I will address Defendants' second argument first.

    2.1    Whether § 1252(b)(9) Strips Court of Jurisdiction

Section 1252(b)(9) provides that judicial review "of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." The Supreme Court warned, however, against adopting an "expansive interpretation of § 1252(b)(9)" at the risk of creating "staggering results." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). The Court explained:

> Suppose, for example, that a detained alien wishes to assert a claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), based on allegedly inhumane conditions of confinement. Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would

never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id.* (internal citations omitted). While the *Jennings* Court found it unnecessary to "attempt to provide a comprehensive interpretation" of this statutory provision, it found that § 1252(b)(9) did not create a jurisdictional bar when the respondents were "not asking for review of an order of removal; [were] not challenging the decision to detain them in the first place or to seek removal; and [were] not even challenging any part of the process by which their removability will be determined." *Id.* at 294–95.

A district court's recent decision in *Chen v. Noem*, No. 25-CV-733, 2025 WL 1163653 (S.D. Ind. Apr. 21, 2025) is instructive here. Yunwei Chen was a Chinese citizen and PhD student at the University of Indiana lawfully in the United States on an F-1 student visa. *Id.* at *1. The Student and Exchange Visitor Information System ("SEVIS") is a centralized government database that tracks international students' compliance with their F-1 status. *Id.* Individuals on an F-1 visa may not engage in certain specified activity, including "criminal activity." *Id.* Engaging in prohibited actions "may result in the termination of a student's SEVIS record, which could end that student's F-1 status, although the ultimate authority to issue or revoke F-1 visas lies with the State Department." *Id.*

Chen received an email from the university informing him that his SEVIS record and lawful F-1 status was terminated based on his identification in a criminal records check. *Id.* at *2. Chen sued DHS Secretary Noem and Acting Director of ICE Lyons in federal court, alleging that the SEVIS termination violated his rights under the Administrative Procedure Act and the Fifth Amendment. *Id.* at *3. He asked the court to issue a TRO enjoining the defendants from terminating his SEVIS record and F-1 student status and enjoining

5

defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including detaining or removing Plaintiff—as a result of that decision pending the instant case." *Id.*

The defendants argued that the court lacked authority to enjoin Chen's removal proceedings under 8 U.S.C. § 1252(g), which provides that "'no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . against any alien under this chapter.'" *Id.* at *8 (quoting 8 U.S.C. § 1252(g)). The court disagreed, finding that Chen was not challenging the decision to commence his removal proceedings; rather, he challenged the Defendants' termination of his SEVIS record and F-1 status. *Id.* at *9. "Chen's request that the Court enjoin removal proceedings . . . comes into the case only incidentally." *Id.* (internal quotation and citation omitted).

Similar here, Calvette Chirinos does not challenge the removal proceedings brought against him; rather, he asserts that Defendants have violated his statutory rights under FOIA. That his FOIA claims implicate his removal proceedings is collateral to the FOIA issues raised. For these reasons, I do not find § 1252(b)(9) strips the Court of jurisdiction here.

### 2.2 Whether EOIR is Bound by Rule 65(d)(2)(C)

Fed. R. Civ. P. 65(d)(2) provides that a restraining order binds "only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Calvette Chirinos acknowledges that EOIR is not a party to this action; however, he argues

6

Case 2:25-cv-01863-NJ    Filed 02/20/26    Page 6 of 12    Document 22

that EOIR is in active concert with Defendants because he is held in ICE custody and because it is "very plausible that USCIS is withholding the FOIA records with the intent that [he] will be ordered removed by EOIR before he has the opportunity to obtain the records and fully develop his asylum claim." (Docket # 14 at 7–8; Docket # 19 at 2–5.) Defendants counter that EOIR operates independently from the DHS within the Department of Justice and there is no evidence that the agencies are acting in concert. (Docket # 16 at 3–5.)

The parties' invocation of Rule 65(d)(2)(C) is premature. Actions that aid and abet in violating an injunction "must occur after the injunction is imposed for the purposes of Rule 65(d)(2)(C), and certainly after the wrongdoing that led to the injunction occurred." *Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010). The court explained that this requirement "is apparent from Rule 65(d)(2)'s text, which requires that nonparties have 'actual notice' of the injunction. A non-party who engages in conduct before an injunction is imposed cannot have 'actual notice' of the injunction at the time of their relevant conduct." *Id.* Thus, the court concluded that permitting a non-party's "pre-injunction conduct to bind them to the injunction would be inconsistent with the purpose of Rule 65(d)(2)(C), which is to prevent defendants from rendering injunctions void by carrying out prohibited acts through third parties who were not parties to the original proceeding." *Id.* In other words, Rule 65(d)(2)(C) comes into play after an injunction is issued and the plaintiff asserts that the non-party, who is acting in concert with a party, should similarly be bound by the injunction.

However, the fact that EOIR is not a party to the action should not matter here. As in the *Chen* case described above, Chen sued members of the DHS based on the termination

of his F-1 visa status; however, given that the termination had implications on Chen's removal proceedings, the court enjoined the Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of Chen's SEVIS record and F-1 status." *Chen*, 2025 WL 1163653, at *13. In other words, the DHS could not, indirectly through EOIR, take action as a result of the termination of the SEVIS record and F-1 status. As one district court explained, the "EOIR's function is . . . an extension of immigration enforcement efforts initiated by CBP or USCIS officers; it does not represent a separate or distinct enforcement mechanism, but merely a secondary step of the enforcement process." *Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 930 (S.D. Cal. 2020). Thus, the Defendants, who initiated the removal action against Calvette Chirinos in this case, should be able to comply with the terms of a TRO and prevent further adjudication of Calvette Chirinos' removal hearing at this time.

    3.    *Whether a TRO Should Issue*

        3.1    Likelihood of Success on the Merits

A plaintiff can establish that he is likely to succeed on the merits by showing that his chances of prevailing are better than negligible. *Omega Satellite Prods. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982); *see also Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986) (citation omitted) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that the plaintiff's chances are better than negligible . . . .'").

Defendants argue that Calvette Chirinos fails to meet this threshold requirement because the allegations in his complaint "can at best be described as conclusory and

unfounded." (Docket # 16 at 7.) Calvette Chirinos raises three separate FOIA violations—"inadequate search," improper withholding of records, and failure to produce segregable information. He alleges that Defendants' records search was inadequate because USCIS failed to produce his complete A-File, as evidenced by the lack of his I-589 form. (Compl. ¶ 29.) He asserts that Defendants misapplied several FOIA exemptions when USCIS withheld certain documents in part and in full. (*Id.* ¶¶ 26–27.) And he alleges that USCIS failed to disclose all reasonably segregable material. (*Id.* ¶ 28.)

Claims such as these are highly context-specific and will require USCIS to show its search was reasonable, justify its decision to withhold requested information, and show it complied with its obligation to disclose all reasonably segregable material. *See, e.g.*, *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) (addressing inadequate search claim); *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995) (addressing withholding of records claim); *Stevens v. United States Dep't of Health & Hum. Servs.*, 747 F. Supp. 3d 1115, 1125 (N.D. Ill. 2024) (addressing production of segregable material claim).

At this juncture, given these factual allegations, I find that Calvette Chirinos' chances of success are better than negligible.

### 3.2  No Adequate Remedy at Law and Irreparable Harm

Defendants argue Calvette Chirinos has other avenues in which to pursue the relief he seeks, including requesting a continuance of the removal proceedings from the immigration judge. (Docket # 16 at 8–9.) Defendants further argue that should the immigration judge deny Calvette Chirinos' request for a continuance, he can always appeal the decision to the Board of Immigration Appeals. (*Id.*) It is unclear, however, how requesting a continuance will resolve Calvette Chirinos' FOIA issues. Calvette Chirinos

already requested and was granted a short continuance from the immigration judge in this matter so USCIS could provide Calvette Chirinos' I-589 form. (Mignon Aff. ¶ 5.) The immigration judge indicated, however, that once the I-589 form was received, he intended to move forward with the removal proceedings. (*Id.*) And EOIR is indeed moving forward with the removal proceedings, despite Calvette Chirinos' continuing FOIA issues, with a hearing now set for March 4, 2026. (Docket # 20.) Thus, even if Calvette Chirinos asks the immigration judge for additional time, there is no guarantee that the request would be granted or that the BIA would overturn a denial. Furthermore, even if additional time is granted, this will not provide Calvette Chirinos with an adequate remedy if the FOIA disputes are not resolved by the time the continuance ends.

A party suffers irreparable harm if he suffers harm that cannot be prevented or fully rectified by the final judgment after trial. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The irreparable harm Calvette Chirinos faces in this case is clear—if his asylum claim is unsuccessful and he is removed from the country; he can no longer pursue asylum. (Docket # 14 at 9, citing 8 U.S.C. § 1158(a)(1).). And if the USCIS is ultimately found to have violated FOIA, a final judgment in Calvette Chirinos' favor will do him no good if he has already been removed from the United States. Thus, Calvette Chirinos has established that he has no adequate remedy at law and will suffer irreparable harm if a TRO is denied.

### 3.3 Balance of Harms

As Calvette Chirinos has made the requisite preliminary showing for a TRO, I must consider whether the irreparable harm he will suffer without injunctive relief is greater than

the harm Defendants will suffer if the TRO is granted, and whether a TRO will harm the public interest.

Defendants argue that if a TRO is granted, it will likely have the effect of providing a "green light" to others facing immigration hearings or other adverse immigration actions to "flood the court system with technical challenges to routine FOIA redactions in order to delay such outcomes." (Docket # 16 at 11–12.) Defendants argue that this will put further pressure on USCIS to timely comply with the already high volume of FOIA requests it receives. (*Id.* at 12.) Defendants further argue that the public has an interest in the orderly and efficient enforcement and adjudication of the nation's immigration laws, including the efficient and timely administration of proceedings in the immigration courts. (*Id.*)

I find that the balancing of equities weighs in favor of issuing a TRO. While Defendants speculate as to the harm a TRO might cause USCIS in the form of increased FOIA requests and the further straining of already limited agency resources, Calvette Chirinos points to a very real and concrete harm he faces without the TRO—removal from the United States without the opportunity to fully litigate his asylum claim. Nor does a TRO harm the public interest. Again, Defendants speculate that a TRO will decrease the efficiency of the immigration courts. But the public has a greater interest in ensuring and facilitating a full and fair process, both in agency compliance with FOIA requests and in adjudicating immigration cases. For these reasons, I find that a balance of harms weighs in favor of granting a TRO.

4. *Whether Calvette Chirinos Must Post Bond*

Fed. R. Civ. P. 65(c) conditions a restraining order on the movant posting security in an amount that the court considers proper to pay the costs and damages sustained by any

party found to have been wrongfully restrained. "But where the Court is 'satisfied that there's no danger that the opposing party will incur any damages from the injunction,' the Court may waive the bond requirement." *Newman v. Nazcr Trac Prop. Owners Ass'n, Inc.*, 601 F. Supp. 3d 357, 368 (E.D. Wis. 2022) (quoting *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010)). Calvette Chirinos argues that a bond is not warranted here as it will cost Defendants nothing to pause the removal hearing while his FOIA claims are litigated. (Docket # 14 at 11.) Defendants do not address Calvette Chirinos' bond argument.

I find that Defendants will not incur any damages as a result of the TRO. Thus, I find it appropriate to waive the bond requirement in this case.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Calvette Chirinos' request for a TRO (Docket # 13) is **GRANTED**.

1. A temporary restraining order is issued immediately.

2. Defendants are ordered to take action to prevent adjudication on the merits of Calvette Chirinos' removal proceedings while his FOIA claims are pending in this Court.

3. This Order shall remain in full force and effect for a period of **fourteen (14) days** pursuant to Fed. R. Civ. P. 65(b)(2).

4. Calvette Chirinos is not required to post bond pursuant to Fed. R. Civ. P. 65(c).

Dated at Milwaukee, Wisconsin this 20th day of February, 2026.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge